AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Idaho

| | |
|---|---|
| United States of America<br>v.<br>**Zane Earl Beckman**<br><br>*Defendant(s)* | Case No.<br>1:20-mj-00253-CWD |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  Between 02/1/2020 and 03/31/2020  in the county of  Ada  in the  District of  Idaho , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. sec. 2251(a) | Sexual Exploitation of Children |

This criminal complaint is based on these facts:
**See attached affidavit of Investigator Mark Dalton**

☑ Continued on the attached sheet.

*Complainant's signature*

**Investigator Mark Dalton**
*Printed name and title*

Sworn to telephonically by me and signed electronically

per Rule 4. 1 Fed.R.Crim.P.   Date: 09/01/2020

*Judge's signature*

City and state:      Boise, Idaho           Candy D. Dale, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Mark Dalton, Investigator with the Attorney General's Office, being first duly sworn, Hereby depose and state as follows:

## INTRODUCTION AND INVESTIGATOR BACKGROUND

1. I am a Criminal Investigator for the Idaho Internet Crimes Against Children (ICAC) Unit with the Idaho Office of the Attorney General. I am a duly appointed, qualified peace officer certified by the Idaho Peace Officer Standards and Training (P.O.S.T.) with a Master Certificate, and have been employed by the Office of the Attorney General since October 11, 2016. I was previously employed by the Blaine County Sheriff's Office for approximately 15 years; where I served in various law enforcement positions, including serving as a Detective from July 2009 until October 2016. I am sworn as a Special Deputy US Marshal, which grants me authority to serve Federal warrants. I have also supervised and assisted in numerous criminal investigations and search warrants.

2. In the course of my career, I have successfully completed over 2000 hours of POST certified training, including multiple courses on various Crime Scene Investigations and Criminal Case Investigations, such as Homicide, Sex Crimes, Stalking and Domestic Violence, and Crimes Against Children. I have attended the Basic ICAC Investigator Course taught by Fox Valley Technical College as part of the National Internet Crimes Against Children investigation initiative, on how to identify, investigate, and prosecute those who use online means to sexually exploit children, as well as having attended the 2017 & 2018 National ICAC Conference in Atlanta, Georgia and attended multiple courses on victim and offender topics. As part of my training and experience, I have reviewed hundreds of images and videos of actual and suspected

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT—1

child pornography, child erotica[1] and obscene visual representations of the sexual abuse of children.

3. The ICAC Task Force is responsible for conducting various undercover online investigations, responding to complaints regarding children sexually exploited via the Internet, conducting community education programs, and monitoring the Internet for the distribution and trading of child pornography files and obscenity directed at minors. I have training and experience in the on-line sexual exploitation of children. I have conducted, been involved with, or trained on, several different types of child exploitation and/or child pornography investigations; ranging from not only possessing child pornography, but also those who trade and distribute child pornography, those who communicate and network with others with a preferential sexual attraction to children and those who collect child pornography to expand their collection of child pornography images and videos (most often because of a sexual attraction to children). Those who participate in this type of illegal activity using technological means can communicate and carry out these activities in multiple ways, and they oftentimes do. One of these ways is through the use of social networking sites and/or various electronic communications.

4. I am submitting this affidavit as probable cause to arrest and charge Zane Earl Beckman with violation of Title 18 U.S.C. § 2251(a), Sexual Exploitation of Children.

## APPLICABLE LAW

Title 18, United States Code, Section 2251(a), provides: "any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign

---

[1] "Child erotica" as used herein includes sexually suggestive images of children, whether clothed or unclothed, that may not meet the definition of "sexually exploitative material."

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT—2

commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2256(2)(A) defines "Sexually explicit conduct" as actual or simulated:

  i. sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex;
  ii. bestiality;
  iii. masturbation;
  iv. sadistic or masochistic abuse; or
  v. lascivious exhibition of the genitals, anus, or pubic areas of any person.

Regarding the definition of "lascivious exhibition of the genitals or pubic areas of any person, most courts have embraced the six-factor lascivious exhibition" test articulated in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986):

  a. Whether the focal point of the visual depiction is on the child's genitalia or pubic area;

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT—3

      b.   Whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

      c.   Whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

      d.   Whether the child is fully or partially clothed, or nude;

      e.   Whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and

      f.   Whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

The *Dost* court also observed, "a visual depiction need not involve all of these factors to be a 'lascivious exhibition of the genitalia or pubic area.' The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor." *Id*.

## STATEMENT OF PROBABLE CAUSE

5.      On May 14, 2020, I, Investigator Mark Dalton, received and reviewed Cyber Tip # 67246565, which had been reported by the mother of Minor Victim 1 (hereinafter MV1) to the National Center for Missing & Exploited Children (NCMEC). According to the Cyber Tip, MV1's mother had discovered that her 10-year old daughter, (MV1),[2] had been conversing with a 26-year old man named "Zane," with the account username of "ffycix2" over the website Kwai.com since February 2020. MV1's mother reported her daughter was asked to send "nude

---

[2] The full name and date of birth for MV1 is known to law enforcement. For purposes of protecting her identity in a court filing, she will be referred to as MV1

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT—4

pictures" of herself to Zane and that he had sent images to her daughter as well. Fearing her daughter may get into trouble with law enforcement for sending the images, MV1's mother was hesitant to make the report. MV1 and her mother reside in Texas. The CyberTip also listed the results of a NCMEC Google search for the suspect's username "ffycix2," and listed a return to https://www.tiktok.com/@ffycix2, which showed another social media platform where the suspect's user name was also being used. Tik Tok is a social media application similar to Kwai.

6. After reviewing the Cyber Tip, I contacted the ICAC Unit in Dallas and was informed the officer assigned to the case was Det. Robert Golladay, with the Garland Police Department. Upon contacting Det. Golladay, he explained he had met with MV1 and her mother and interviewed them both. He also explained he had identified the suspect as Zane Beckman through subpoenaing the TikTok[3] account used by the suspect, which had been identified by NCMEC in the tip. The TikTok subpoena resulted in an IP address and phone number for the suspect. Det. Golladay stated he sent a subpoena to Cable One for the IP address and it returned to Zane Beckman at 3559 Muleskinner Dr. in Boise, ID.

7. In investigating Beckman through the local databases for Beckman's name and contacts with local law enforcement, I was provided a Boise Police report, DR-2014-408406, which described a possible rape of a then 16-year old girl, whom Beckman had met on the dating application Tinder. The victim stated she was 17-years old and Beckman had stated he was 19-years old, when he was actually 21-years old at the time. The two arranged to meet at his apartment twice on 30th Street in Boise, and engaged in intercourse on April 16, 2014. Beckman did not provide a statement and no charges were filed in this case. I also found, attached to the BPD report, a report filed by the Ada County Sheriff's Office, DR- 58729, dated on August 13, 2010, alleging

---

[3] Tik Tok is a short-form, video-sharing app that allows users to create and share 15-second videos, on any topic.

then 17-year old Beckman had engaged in Lewd Conduct with a 9-year old female child on June 25, 2010. The report described an incident at Beckman's parent's residence on Floating Feather Road, in which the victim was spending the night at the Beckman residence with Beckman's then 9-year old sister. The report stated during the evening they had been watching a movie and Beckman had covered the victim and himself with a blanket and had then placed his hand down the front of the victim's "lower clothing" and had placed the victim's hand inside the front of his "lower clothing."  The victim reportedly told him "No" and then told Beckman's parents, who informed the victim's parent's the following morning.  The report stated Beckman denied the allegations and stated he "may have touched her with his foot incidentally while on the couch."  In a later interview with law enforcement, Beckman admitted to having touched the victim's thigh, under her pants leg, to about the top of her thigh. Beckman admitted he had placed the victim's hand on his stomach and then slid her hand down his abdomen under his "buttoned pants" but denied her touching his penis; stating her hand was under his jeans but above his underwear." It should be noted that the above listed cases were not charged and Beckman shows no criminal history.

8. During the course of my investigation, Det. Golladay also emailed several reports, subpoenas, and subpoena responses to me. One of the attachments he provided was the Affidavit In Any Fact filled out and signed by MV1's mother, dated April 30, 2020. In her statement, MV1's mother explained how her daughter had borrowed her iPad in December 2019 to download Kwai, which is an app similar to TikTok, and had then moved to a new residence in January 2020, which kept her from attentively following her daughter's activities online. In March 2020, she took the iPad back and logged into the Kwai app and noticed a male on the profile. MV1's mother stated she read the conversation from the beginning to end.  The conversation occurred on February 18,

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT—6

2020, and she found the photos exchanged between her daughter and the male. She explained that in the electronic conversation, the male stated he lived in Idaho and is 27-years old. He had asked MV1 her age and grade she was in. The conversation became "explicit" and the male sent a photo of his penis to MV1 and asked her to send photos of herself. MV1's mother stated that MV1 sent photos of her chest and vagina to him, and stated the male also asked for MV1 to "touch herself inappropriately."

9.   On May 19, 2020, Det. Golladay sent me the video of the interview he conducted with MV1 on April 30, 2020 at 1320 hours local time, via Evidence.com. I later viewed the recording and, during the interview, MV1 explained how she likes to be the center of attention sometimes, and how mad and upset her mom was after she found the Kwai app. She explained she had always wanted TikTok and wasn't allowed to have it, so she found Kwai on the app store, as it was similar to TikTok, and allowed you to create videos. MV1 explained she was living with her aunt at the time she downloaded the app and had moved into their new home when she began speaking with the man she called Zane. She explained she met him through watching the dance videos and that he had approached her, through her dance videos under her Kwai profile user name, which she had posted a picture of herself at her 5th birthday party. MV1 stated she had used her mother's phone number to open the app account, and explained how she and Zane connected via the Kwai app. When asked about their conversations, MV1 explained that one day Zane asked her to send him a picture of her bellybutton, and how they had exchanged photos of their faces to one another. She explained Zane later asked for a full body picture of herself and she stated she forgot he was a man. MV1 also stated Zane asked for pictures of her naked and she stated she had sent him some, and clarified that the pictures were of her with no clothing when she was in her bedroom. When asked, MV1 did not recall exactly how many nude photos she had sent Zane, or of

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT—7

the specific body parts she displayed, but knew it was more than two photos. She also explained that Zane sent her pictures of himself and videos of him standing in front of the camera; which she stated was "creepy." She then provided a short description of Zane, stating he had brown hair, was old, and pale. MV1 also stated Zane had sent her photos of himself naked, and explained she knew he had a job as he had told her once that he was on his way home from work, though she didn't know what his job was, or where. She also remarked that all of Zane's followers on Kwai were girls.

10. Det. Golladay then went over a series of screenshot printouts he had made previously from accessing MV1's Kwai account on her iPad, and she identified each photo she was shown of herself and those Zane sent her. MV1 was informed that her mother had deleted photos from the iPad. MV1 also went over part of a chat they had engaged in where she told Zane she was in the 4th grade and he told her he was 26-years old. When asked, MV1 clarified she was the only one who had used her device to interact with Zane, and stated he had never called her for a live chat through the app. Det. Golladay then explained online safety with MV1 and she explained how she and Zane connected and communicated using the Kwai app. Det. Golladay also asked about the photos her mother had deleted, and MV1 stated they were pictures of her "private parts," and described them as the parts used to use the rest room. When asked what she called her private parts, MV1 stated she called them her "Hoohaw." Det. Golladay brought in MV1's mother at the end of the interview and together they discussed the interview and how the case may progress.

11. On June 1, 2020 at approximately 0555 hours, I drove to the suspect's residence at 3559 Muleskinner Drive in Boise and verified a black 2013 Tesla sedan, Idaho plate # 1A1335Y, registered to Beckman, was parked in the driveway. I then set up a surveillance post just west of the residence and waited until the vehicle drove past him at approximately 0847 hours. I followed

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT—8

the vehicle out of Columbia Village, down East Amity Road, to Federal Way and then onto Northbound Broadway Avenue. I followed the suspect to the Mister Carwash on Boise Avenue and Broadway, then to the Starbucks at 1100 Broadway Avenue. It was as he was coming out of Starbucks that I was able to visually identify Beckman as the driver, while I observed him through binoculars from across the street.

12. On June 1, 2020, I also received an email from Det. Golladay which contained the subpoena returns from Kwai.com. The spreadsheet supplied by Kwai showed the user name "ffycix2" had used the phone number of (208) 954-4127, which was assigned to a Google (Pixel 3) Android cell phone, and had recently logged in the account using the IP address of 69.92.5.31. Both the above phone number and IP address were found on the Cable One subpoena returns, which Det. Golladay had previously submitted an administrative subpoena for. The IP address used to log in to the Kwai account returned to Zane Beckman at his address on Muleskinner Dr..

13. On July 13, 2020, I began periodic surveillance of Zane Beckman's residence at 3559 Muleskinner Drive, through August 31, 2020. During those surveillance attempts, I was able to establish Zane Beckman had another male living at the residence; identified by his vehicle, a blue 2012 Nissan Pathfinder bearing Idaho plate 1A307ME, and visually identifying him leaving the residence on a several occasions. I also observed Beckman's vehicle in the drive multiple times, and visually identified Beckman at, or leaving, the house on four separate occasions.

14. On August 3, 2020, I received the FedEx envelope Det. Golladay had agreed to send me containing his case files and the results of the forensic exam on the iPad that had been used by MV1 to communicate on the Kwai app. In later going through the file entitled "Screen Captures from Kwai Account" I found screen captures of the conversation string between suspect, using the screen name "TA", and the victim, MV1 The conversation was initiated by "TA" on

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT—9

December 25, 2019 at 6:24 PM stating he liked her videos. MV1 responded the following day and introduced herself and "TA" responded with "I'm Zane" and asked "what grade are you in?" to which MV1 replied "4th." "TA" then responded "nice I'm a lot older than you" and when asked by MV1 how old, he replied "I'm 26." It should be noted that at the time of the conversation, Beckman was indeed 26-years old.

15.     The conversations ran along normal lines for approximately the next three and a half weeks. They discussed following one another on Kwai, and did so, they complimented each other's profile pictures, and when MV1 asked, "TA" stated "I'm from Idaho what about you?'" MV1 responded she was from the "Dominican republic" and "TA" stated "that's so cool" and "that's probably why you're so pretty." MV1 then sent him a photo of herself, which, during her interview with Det. Golladay, she explained was an old photo of her when she was five.

16.     On February 18, 2020 at 4:11 PM, "TA" texted "hey I missed you last night" and after explaining that he had been working MV1 stated "Wow you must have been busy then." "TA" then stated "a little but I still have time to talk to a cute girl" which resulted in exclamations of awe, heart emojis and MV1 saying "Thanks." "TA" then asked "maybe you could send me a selfie" and MV1 responded "your to sweet(sp)."  At 4:14 PM, MV1 texted "So what do you want to talk about" and "TA" stated "well maybe we could exchange pictures." At which time they each sent photos of themselves. "TA" sent a picture of himself in the bathtub from the chest up. It should be noted that the above photo "TA" sent of himself was identified by me as being Zane Beckman, as I was familiar with his appearance having reviewed his driver's license photograph and through my personal surveillance of Beckman.

17.     The course of the conversation then ran to "TA" asking for her to show him her outfit, and MV1 took a selfie of herself in a pair of grey loungewear. "TA" then told her "there is

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT—10

something kind of silly that I want you to do" and asked her to "pull your shirt up and show your tummy?" MV1 then agreed and sent a photo of her bare abdomen. "TA" replied "wow!" and "it looks so good" and then stated "you would probably go further if I asked, huh?" and "do you want to?" MV1 replied "I mean how far" and "TA" responded "umm like the top off" and "so I can see your chest." MV1 then took a photo of herself with her shirt off and wearing a pink sports bra. "TA" then asked "would you take that pink thing off" and MV1 stated "Umm sure" and sent a photo of her bare right breast. "TA" then responded "wow!" and asked "can you back up a little so I can see both of them?" and MV1 obliged and sent a photo of both her bare breasts. "TA" responded with "you look stunning!!", "I wish we could hug and touch" and "that would be amazing." He then asked her "do you have any other apps for chatting" and MV1 responded saying "Yeah but can we stay hear(sp)." and "TA" stated "this one blocks some stuff and they block me from sending messages sometimes." "TA" then stated "so I'm scared to go further because I might get blocked." MV1 replied with "Ohh" and "hold on a sec."

18.     They took a short break in the conversation and MV1 responded she was back at 4:35 PM, and asked "Do you want to do something to make the time go bye(sp)" and "TA" responded "I really liked when you were sending pictures" and stated "your body is amazing." MV1 sent a photo of herself, just her face, and replied "Thanks." "TA" then asked "do you want to go lower with the pictures?" MV1 stated "Sure" and "What first" and "TA" responded with "show me what you're wearing down there I forgot." At 4:40 PM, MV1 replied "Sorry but I have undies on" and "TA" replied "oh can I see", to which MV1 sent a photo of her bare legs. "TA" then replied "mmm that looks amazing" and "can you open your legs for me?" and MV1 replied "Sure." "TA" then stated "good girl."

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT—11

19.     There was another pause in the conversation and at 4:47 PM "TA" asked if she was there. MV1 responded "Yeah" and apologized for her internet. "TA" stated "okay I'm just waiting" and MV1 sent a close-up photo of her pubic area covered by multi-colored underwear. "TA" replied "wow that spread is excellent" and "what grade are you in." After another pause, at 4:50 PM, MV1 responded with "6th" and "TA" replied "that's perfect." When MV1 asked "Why" "TA" stated "that's a really good age." MV1 then replied with "Haha" and "that smirk," referring to an emoji "TA" had sent and he responded with "hahahaha" and "well it's because I'm having dirty thoughts about you," and MV1 responded with several emojis and stated "I'm hungry." "TA" then stated "do you want to take off your undies for me?" MV1 replied "Um sure", and "TA" responded with "okay."

20.     It should be noted that the illicit chat continued in detail, and, based on the text responses by "TA", it is apparent MV1 continued to comply with his requests and sent photos of herself. MV1 confirmed sending the images of her "Hoohaw" (MV1's word to describe her private parts) to "TA" during her recorded interview with Det. Golladay. However, the illicit images, which were reportedly sent to "TA" by MV1, had been deleted from the iPad, and possibly the Kwai account, by MV1's mother when she had discovered the chat on her iPad on March 31, 2020, and did not want MV1 to get into any trouble by the police. However, MV1's mother told Det. Golladay that she had seen pictures of MV1's vagina that MV1 had sent during the conversation. She then deleted the pictures of MV1's vagina.

21.     I also located a text message that is dated March 31, 2020 at 6:18 PM and is as follows: "I'm hern(sp)", "I'm reporting you right now for endangering a minor", and "This is her mother." This message appears to be sent by MV1's mother after she located the iPad.

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT—12

22. In later speaking with Det. Golladay, he informed me that in speaking with MV1's mother, she had informed Det. Golladay that, after discovering the Kwai application and chat string on her iPad, she sent the confrontation text to "TA" and then deleted the photos of MV1's vagina that had been sent. She verified that the Kwai user name displayed for the suspect was the "ffycix2", and that after receiving the confrontational text, "TA" apparently deactivated his account as his username defaulted to "TA."

23. Det. Golladay also informed me that the forensic investigators had been unable to locate or recover any of the deleted images from the iPad.

24. On August 31, 2020, a search warrant was sought and signed by United States Magistrate Judge Candy W. Dale. The search warrant permitted law enforcement to search Beckman's residence, his person, and his vehicle for evidence of the distribution, possession, and production of child pornography.

25. On September 1, 2020 at approximately 0700 hours, members of the Idaho Internet Crimes Against Children Unit, the Boise Police Department, the Federal Bureau of Investigations and the US Postal Inspectors Service, served the above warrant at Beckman's residence at 3559 E. Muleskinner Drive in Boise, Idaho. Upon entry into the home, Beckman was asleep in a bedroom in the house. During the execution of the search warrant, Beckman was detained from his bedroom and was escorted into the living room by Inv. Chris McCormick. As I approached Beckman, I saw he had no shirt on and that he had a mole on his torso, just to the left and below his right nipple. I recognized this mole as matching the mole in one of the photos that the suspect sent to MV1 during their Kwai.com conversation. I explained to Beckman our having a search warrant for the residence, him, and his car. I then used my work cell phone to take a photo of Beckman shirtless. I

then escorted him to the laundry area and assisted him in getting fully dressed with the clothes from the dryer.

26.     After he was fully dressed, I escorted him to the Forensics Truck to interview him with Det. Terry Phillips. At approximately 0712 hours, I removed his handcuffs and read aloud a Miranda Rights Waiver form to Beckman and he was then allowed to read the form. He then informed me he did not want to speak with us without an attorney. The interview was concluded.

27.     During the execution of the search warrant, a Samsung cellphone was located on the bedside table next to the bed Beckman was sleeping in when we arrived at the residence. Forensic examinations of all electronic devices collected at the residence, including the Samsung cellphone are pending.  A preliminary review of the Samsung cellphone was conducted by Investigator Eric Kjorness with the ICAC Unit. According to Investigator Kjorness, he located 9 images in the Pictures folder on the cellphone. I reviewed the images and confirmed they appear to be of MV1. In one of the pictures, her face is visible and I am able to confirm it is MV1 from reviewing the previous pictures of her in this investigation. In this particular picture, it appears the camera is between her legs and she is taking a picture of her nude vagina. Her face is looking down at the camera. I believe that this image constitutes the lascivious display of her genitals and constitutes child pornography under federal law. I recognized another picture of her pulling her underwear down with a portion of her nude genitals exposed. Her face is not visible, but I recognize the underwear as being the same underwear I saw in the screenshots of the photos that were taken from MV1's iPad and that were sent to the suspect.

## CONCLUSION

Based on the foregoing, there is probable cause to arrest and charge Zane Beckman with violation of Title 18 U.S.C. § 2251(a), Sexual Exploitation of a Child.

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT—14

Respectfully submitted,

Mark Dalton
Investigator, Attorney General's Office
ICAC Task Force

Subscribed electronically and telephonically this 1st day of September, 2020.

The Honorable Candy W. Dale
United States Magistrate Judge