RAFAEL M. GONZALEZ JR.
UNITED STATES ATTORNEY
KASSANDRA MCGRADY, IDAHO STATE BAR NO. 8455
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST., SUITE 500
BOISE, ID 83702
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:20-cr-00207-DCN |
| Plaintiff, | **RULE 11 PLEA AGREEMENT** |
| vs. | |
| ZANE EARL BECKMAN, | |
| Defendant. | |

Rev. September 2019

## I.      GUILTY PLEA

A.      **Summary of Terms.**  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), the Defendant, the attorney for the Defendant, and the Government[1] agree that the Defendant will plead guilty to Count Two of the Indictment, which charges the Defendant with Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a). The Defendant will also admit the asset forfeiture allegation in the Indictment.

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this agreement.  Upon acceptance of the Defendant's guilty plea, and the Defendant's full compliance with the other terms of this agreement, the Government, will dismiss, under Federal Rule of Criminal Procedure 11(c)(1)(A), Count One, Count Three, Count Four, Count Five, Count Six, Count Seven, and Count Eight of the Indictment. Additionally, the Government agrees, under Federal Rules of Criminal Procedure 11(c)(1)(B), to recommend a sentence within the guideline range.

B.      **Oath.**  The Defendant will be placed under oath at the plea hearing.  The Government may use any statement that the Defendant makes under oath against the Defendant in a prosecution for perjury or false statement.

## II.     WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL

The Defendant waives the following rights by pleading guilty pursuant to this agreement: 1) the right to plead not guilty to the offense(s) charged against the Defendant and to persist in that plea; 2) the right to a trial by jury, at which the Defendant would be presumed innocent and the burden would be on the Government to prove the Defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the Defendant was guilty of the

---

[1] The word "Government" in this agreement refers to the United States Attorney for the District of Idaho.

offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the Defendant.  If the Court accepts the Defendant's guilty plea, there will be no trial.

## III.    NATURE OF THE CHARGES

    A.    **Elements of the Crime.**  The elements of the crime of Sexual Exploitation of a Child, as charged in Count Two of the Indictment are as follows:

        1.    First, at the time, the minor victim was under the age of eighteen;

        2.    Second, the Defendant knowingly employed, used, persuaded, induced, enticed, or coerced the minor victim to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and

        3.    Third, the Defendant knew or had reason to know that such visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce,  the visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or such visual depiction had actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce.

"Sexually Explicit Conduct" is defined in 18 U.S.C. § 2256(2)(A) as "actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the anus, genitals, or pubic area of any person."

    B.    **Factual Basis.**  The Defendant admits the following facts are true:

In April of 2020, the mother of "Minor Victim 1," who was 10 years old at the time, contacted the Garland Police Department ("GPD") in Texas to report that "Minor Victim 1" had been communicating with an adult male, later identified as the Defendant, over the social media application Kwai. A GPD Detective interviewed "Minor Victim 1" and she disclosed that the Defendant had contacted her through Kwai, and they began communicating. During their communications, she informed the Defendant she was in fourth grade, and he told her he was 26 years old. Later during the communications, the Defendant asked her to take nude pictures of herself and send them to him and he sent her nude images of himself. The GPD Detective viewed the iPad "Minor Victim 1" used to communicate with the Defendant and obtained screenshots of a conversation that took place on February 18, 2020. During the communications, the Defendant specifically asked "Minor Victim 1" to take a picture of her nude breasts and genitals and send them to him.  "Minor Victim 1" responded by sending him pictures of her exposed breasts and genitals. An IP address used to log in to the Defendant's Kwai account returned to his residence at 3559 E. Muleskinner Dr. Boise, ID.

The Idaho Internet Crimes Against Child Task Force ("ICAC") assisted GPD on the investigation. On August 31, 2020, the Honorable Judge Candy W. Dale, United States Magistrate Judge, issued a search warrant for the Defendant's residence in Boise to search for evidence of communications with "Minor Victim 1" and files of child pornography. On September 1, 2020, ICAC and other members of law enforcement, executed the search warrant at the Defendant's residence. During the execution of the search warrant, law enforcement learned that "Minor Victim 2," who was 8 years old at the time and "Minor Victim 3" who was 4 years old at the time frequently spent time at the Defendant's residence.

During the search of the residence, law enforcement located several electronic devices belonging to the Defendant, including a Samsung Galaxy S-20+, Model SM-G986U1 cellular

phone with Serial Number R5CN105YY8F that was manufactured in Vietnam, a Razor laptop with Serial Number BY2019A89204018, a Seagate external hard drive with Serial Number NAA52NL0 that was manufactured in China, a Google Pixel 1 cellular phone, a Google Pixel 2 cellular phone, a Google Pixel 3 cellular phone, a Samsung USB flash drive with an unknown model number and serial number, and a PNY USB flash drive with an unknown model number and serial number.

A forensic examiner with ICAC examined the electronic devices. On the Samsung Galaxy S-20+ cellphone, ICAC located files depicting "Minor Victim 1" exposing her genitals that she had sent to the Defendant through Kwai.[2] ICAC also located files of child pornography depicting "Minor Victim 2" and "Minor Victim 3" that the Defendant had produced at his residence on Muleskinner Drive using his Samsung cellphone and his Google Pixel 3 cellphone. ICAC located the following specific images depicting "Minor Victim 2" and "Minor Victim 3:"

- A series of images that were taken on August 22, 2019, with the Google Pixel 3 cellphone that depict "Minor Victim 2" in the Defendant's bedroom. In some of the images, she is laying down with her shirt pulled up to expose her chest. In other images, she is pulling down her pants to expose her genitals. In one picture, the Defendant's hand is seen pulling down her underwear to expose the top of her genitals. [3]

- A series of images that were taken October 18, 2020, with the Google Pixel 3 cellphone that depict an extremely close-up view of "Minor Victim 2's" genitals.[4]

- A series of images that were taken on January 1, 2020, with the Google Pixel 3 cellphone that depict a close-up view of "Minor Victim 2's" genitals.[5]

---

[2] These images relate to Count One of the Indictment.
[3] These images relate to Count Two of the Indictment.
[4] These images relate to Count Three of the Indictment.
[5] These images relate to Count Four of the Indictment.

- A series of images that were taken on May 7, 2020, with the Samsung Galaxy S-20+ cellphone that depict "Minor Victim 2" laying on the couch in the Defendant's residence. In some of the images, she is pulling up her shirt to expose her chest. In other images, she is pulling down her pants and underwear to expose her genitals.[6]

- A series of images that were taken on February 6, 2020, with the Google Pixel 3 cellphone that show "Minor Victim 3's" face right next to the Defendant's erect penis. In one image, "Minor Victim 3's" hands are around his erect penis, and his penis is very close to her lips. It appears from the image that his penis is touching her chin.[7]

- A series of images that were taken on May 7, 2020, with the Samsung S-20+ cellphone that depict "Minor Victim 3" on the couch in the Defendant's residence. In the images, she is wearing a pull-up diaper. One image shows her diaper pulled down and the Defendant is using his hand to spread apart her genitals.[8]

"Minor Victim 2" attended a forensic interview during which she disclosed that the Defendant had forced her to touch his genitals. She further disclosed that he had forced her to take off her pants and underwear and he had taken pictures of her with his phone.

On the Defendant's Samsung cellphone, ICAC also located over 1,000 files of child pornography depicting other children. ICAC located numerous chat messages where the Defendant discussed his sexual interest in both male and female children with other individuals. ICAC also located chat messages where the Defendant engaged in sexually explicit conversation with several different minor children and received explicit images of them.

ICAC located one specific chat thread where the Defendant communicated with a female who stated she was 15 years old (hereinafter "Minor Victim 4"). "Minor Victim 4" has been

---

[6] These images relate to Count Five of the Indictment.
[7] These images relate to Count Six of the Indictment.
[8] These images relate to Count Seven of the Indictment.

**Plea Agreement**           5          

identified by law enforcement and was actually 13 years old at the time she began communicating with the Defendant. The Defendant communicated with "Minor Victim 4" between December 18, 2018, and March 15, 2020. During the communications, the Defendant engaged in sexually explicit conversation with her and requested that she take explicit images of herself and send them to him. In response, "Minor Victim 4" sent him an image of her genitals. The Defendant also discussed his interest in "Minor Victim 2" and sent "Minor Victim 4" a picture of "Minor Victim 2" with her shirt up exposing her breasts. The Defendant also discussed how he had "Minor Victim 2" touch his genitals and expressed concern that "Minor Victim 2" was going to tell someone about what had happened between the two of them. The Defendant further discussed being sexual attracted to an 8-year-old boy he met through his volunteer work with the Boys and Girls Club.

ICAC located another chat thread dated December 9, 2018, through December 11, 2018, where the Defendant was communicating with who appeared to be a prepubescent male child under the age of 12 (hereinafter "Minor Victim 5"). During the chat conversation, the Defendant asked "Minor Victim 5" to send him pictures of his baby sister's genitals. The Defendant sent "Minor Victim 5" several files of child pornography in exchange for pictures of "Minor Victim 5's" sister (hereinafter "Minor Victim 6.")  "Minor Victim 5" responded by sending the Defendant several images showing the genitals of "Minor Victim 6," who appeared to be an infant or toddler.[9]

During the investigation, ICAC was contacted by the Montgomery County Detective Bureau ("MCDB") in Pennsylvania regarding an open investigating involving the Defendant

---

[9] Law enforcement has been unable to identify the children involved in this chat thread. However, the Defendant agrees that his conduct with "Minor Victim 5" and "Minor Victim 6" at least constitutes the attempted sexual exploitation of a child/attempted production of child pornography as the Defendant believed he was communicating with a minor.

**Plea Agreement**                    6                    Rev. September 2019

communicating through Kik Messenger with a 9-year-old female child (hereinafter "Minor Victim 7"). MCDB provided ICAC with chat messages that were recovered from "Minor Victim 7's" iPod that took place August 15, 2020, through August 26, 2020. During the messages, the Defendant asked "Minor Victim 7" to take explicit images of herself and send them to him. "Minor Victim 7" responded by sending the Defendant pictures of her genitals. ICAC located images of "Minor Victim 7" on the Defendant's Samsung cellphone.

ICAC also located evidence on the Defendant's cellphone that he had received explicit images of a child who was later identified to be 10-year-old "Minor Victim 8." The Defendant had numerous screenshots depicting the genitals of "Minor Victim 8." When "Minor Victim 8" was interviewed by law enforcement, she said she had communicated with the Defendant on Snapchat and had sent him explicit images of herself after he had requested them.

ICAC also located hundreds of files of child pornography on the Defendant's Seagate external hard drive and the Samsung USB flash drive. ICAC was unable to examine the Defendant's Razor laptop, Google Pixel 1 cellphone, Google Pixel 2 cellphone, Google Pixel 3 cellphone, or his PNY USB flash drive either because the device was password protected, was encrypted, or would not power on. Given the prevalence of child pornography found on the examined devices, the Defendant agrees there is a factual and legal basis for forfeiture of all of the items listed in the forfeiture section of this Agreement. In particular, the Defendant agrees that his residence located at 3559 E. Muleskinner Dr. Boise, ID 83716, is subject to forfeiture as facilitating his crime and making it easier to commit and harder to detect. At his residence, he stored and operated the above-described electronic devices, he communicated with minors and solicited explicit images from them, he used the internet connection at his residence to facilitate the crimes, and he produced child pornography of "Minor Victim 2" and "Minor Victim 3" while they were spending time at the residence.

## IV.    SENTENCING FACTORS

A.    **Penalties.**  The crime of Sexual Exploitation, as charged in Count Two is punishable by:

      1.    a term of imprisonment of not less than 15 years and up to 30 years;

      2.    a term of supervised release of not less than 5 years and up to life; and

      3.    a maximum fine of $250,000, and a special assessment of $5,100.

B.    **Supervised Release.**  The Court may impose a period of supervised release.  No agreement exists as to its length.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crime(s) to which the Defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and prosecution.

C.    **Fines and Costs.**  The Court may impose a fine.  No agreement exists as to its amount of the fine.  The Court may also order the Defendant to pay the costs of imprisonment, probation, and supervised release.

D.    **Special Assessment.**  The Defendant will pay the special assessment(s) before sentencing and will furnish a receipt at sentencing.  Payment will be made to:

      The United States District Court, Clerk's Office
      Federal Building and United States Courthouse
      550 West Fort Street, Fourth Floor
      Boise, Idaho 83724

E.    **Restitution.**  In addition to paying any forfeiture, fine, and costs imposed, the Defendant also agrees to pay, and be ordered to pay, restitution equal to the full amount of loss caused to any victim.  The Defendant further agrees to pay restitution equal to the loss caused to "Minor Victim 1," "Minor Victim 2," "Minor Victim 3," "Minor Victim 4," "Minor Victim 5," "Minor Victim 6," "Minor Victim 7," and "Minor Victim 8," and agrees that all eight will be considered victims in this case for purposes of restitution and victim's rights, including the right

to give a victim impact statement. The Defendant further agrees that any child depicted in any

image that he possessed (as alleged in Count Eight of the Indictment), as identified by the

National Center for Missing and Exploited Children or otherwise, shall be considered a victim for

purposes of 18 U.S.C. § 2259(c), even though Count Eight will be dismissed as part of this plea

agreement. The Defendant specifically agrees to restitution as follows:

      1.      Restitution to "Minor Victim 2" in the amount of $35,000.

      2.      Restitution to the guardians of "Minor Victim 2" in the amount of

17,889.12.

      3.      Restitution to the guardian of "Minor Victim 7" in the amount of $6,375.

      4.      Restitution to Crime Victims' Compensation in the amount of $789.

      5.      Restitution to the victim "Raven" of the Teal&Pink Princess child

pornography series in the amount of $3,000.

      6.      Restitution to the victim "Jenny" of the Jenny child pornography series in

the amount of $3,000.

      7.      Restitution to the victim "Jane" of the Cinderblock blue child pornography

series in the amount of $3,000.

The Defendant further agrees to deliver a certified check or money order to the clerk of the

court in the amount of $ 69,053.12, payable to the "Clerk, U.S. District Court," to be deposited

into the court registry not more than 45 days after the entry of his guilty plea, to be applied to

satisfy restitution, regardless of whether sentencing occurs in this case.

The Defendant agrees that all monetary penalties imposed by the Court, including

restitution, will be due immediately and can immediately be enforced by the Government

(whether through 18 U.S.C. § 3613 or otherwise).   The Defendant agrees that the payment

schedule or plan is neither the only method, nor a limitation on the methods, available for

enforcing the judgment. It is simply a schedule or plan for minimum payments. The Defendant is aware that voluntary payment of restitution prior to adjudication of guilt is a factor the Court can consider if the Defendant has accepted responsibility under U.S.S.G. § 3E1.1.

      **F.**    **Forfeiture.** The Court will enter a forfeiture order as part of the Defendant's sentence. The Defendant will immediately forfeit to the Government the property set out in this agreement, the charging document to which the Defendant is pleading, and any Bill of Particulars. Defendant agrees that those documents provide statutory authority for forfeiture.

        1.    Additionally, Defendant agrees to forfeit the following.

           a.    Seized Property.

              1)    A Samsung Galaxy S-20+, Model SM-G986U1 cellular phone with Serial Number R5CN105YY8F that was manufactured in Vietnam.

              2)    A Razor laptop with Serial Number BY2019A89204018.

              3)    A Seagate External Hard Drive with Serial Number NAA52NL0, which was manufactured in China.

              4)    A Google Pixel 1 cellular phone.

              5)    A Google Pixel 2 cellular phone.

              6)    A Google Pixel 3 cellular phone.

              7)    A Samsung USB Flash drive with an unknown model number and serial number.

              8)    A PNY USB flash drive with an unknown model number and serial number.

           b.    Property Used to Commit or Facilitate Commission of the Crime.

1) The Defendant's residence located at 3559 E. Muleskinner Dr. Boise, ID 83716.

Prior to the sentencing date, but not more than 45 days after the entry of his guilty plea, Defendant may deliver to the United States a cashier's check or equivalent, payable to the United States Marshal Service for $68,000 in lieu of the forfeiture of the real property, which combined with the above-described restitution payment represents the approximate net equity in the residence. Once that check is accepted, cashed, and cleared by the United States, the United States will release its *lis pendens* on the residence located at 3559 E. Muleskinner Dr. Boise, ID 83716, and discontinue forfeiture actions against it. Until such payment is made, the United States is free to pursue criminal and/or civil forfeiture of the residence located at 3559 E. Muleskinner Dr. Boise, ID 83716, and Defendant agrees to the same.

c. Forfeiture Money Judgment for Unrecovered Property. The Court may impose forfeiture of a monetary sum, or money judgment, equivalent to unrecovered property including unrecovered proceeds of the offense of conviction obtained and controlled by the Defendant, property derived from or traceable to such proceeds, and/or unrecovered property the Defendant used to commit or facilitate the offense, as authorized by applicable statutes.

d. Substitute Assets Up To the Value of Unrecovered Property Subject to Forfeiture. Pursuant to 21 U.S.C. § 853(p) and other applicable statutes, the Defendant agrees to forfeit substitute assets, or any other property of the Defendant up to the value of any unrecovered property subject to forfeiture. Post-sentencing forfeiture of substitute assets does not entitle the Defendant to resentencing.

2. Defendant makes the following additional agreements and waivers related to forfeiture.

a. Regarding the above property, the Defendant: (a) is the sole owner, unless otherwise set out herein; (b) hereby withdraws any claims filed in any administrative or

**Plea Agreement**                                    11                                    Rev. September 2019

civil forfeiture proceeding; (c) agrees to assist fully in the forfeiture and to take all steps necessary to pass clear title to the Government; (d) will testify truthfully in any forfeiture proceeding and will not assist a third party in asserting a claim; (e) agrees to administrative or civil forfeiture, or abandonment, if the Government does not pursue criminal forfeiture; and (f) agrees that variations or errors in serial numbers or property descriptions shall not affect forfeiture.

        b.      Forfeiture is separate from all other penalties, including fines and restitution.  As with other penalties, the Court will determine forfeiture at sentencing.  Any stated or pleaded forfeiture amount is an "at least" amount and the Court may impose greater or additional forfeitures.  The Defendant waives requirements regarding notice and pronouncement of forfeiture, including:  (a) in charging documents, (b) at the change of plea hearing, (c) at sentencing, and (d) in the judgment.  See FED. R. CRIM. P. 11(b)(1)(J), 32.2, and 43(a).

        c.      The Defendant waives all challenges and objections, on any grounds, to any forfeiture in accordance with this agreement.  If this agreement is withdrawn for any reason, the Defendant waives the right to contest all administrative and civil forfeitures that began before the withdrawal.  The Defendant agrees to hold the United States, its agents, and employees harmless from any claims related to seizures or forfeiture in this case or the related investigation.  The forfeiture provisions of this agreement will survive the Defendant's death and bind the Defendant's heirs, successors and assigns until forfeiture is fully collected.  Any forfeited property directed to victims shall not be returned even if Defendant's conviction is overturned or abated.

        d.      The District Court shall retain jurisdiction to consider and rule on forfeiture and related issues, unless a higher Court directs otherwise.

## V.    SEIZED PROPERTY: ABANDONMENT AND WAIVER

The Defendant abandons, releases, and waives any interest in property seized or otherwise obtained by the Government or law enforcement in this case unless specific exceptions are noted in this agreement. Such property will be disposed of, destroyed, sold, or transferred in the Government's sole discretion. Such disposition shall not constitute satisfaction of any assessment, fine, restitution, forfeiture, cost of imprisonment, or any other penalty that this Court may impose.

## VI.    UNITED STATES SENTENCING GUIDELINES

**A.**    **Application of Sentencing Guidelines.** The Court must consider the U.S.S.G. in determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the Court may consider "relevant conduct" in determining a sentence pursuant to U.S.S.G. § 1B1.3.

The Court is not a party to this agreement and the agreement does not bind the Court's determination of the U.S.S.G. range. The Court will identify the factors that will determine the sentencing range under the U.S.S.G. The Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that this agreement does not bind the Court, the parties agree to the recommendations and requests set forth below.

**B.**    **Sentencing Guidelines Recommendations and Requests.**

1.    **Government's Statements at Sentencing.** The Government reserves the right to allocute fully at sentencing regarding any sentencing recommendation. The Government may rely on or submit any information, including relevant conduct, in support of its recommendation regardless of whether the agreement or the pre-sentence investigation report contain this information. Any exception must be specified in this agreement.

2.    **Acceptance of Responsibility.** If the Defendant clearly accepts responsibility for the offense, the Defendant will be entitled to a reduction of two levels in the

combined adjusted offense level, under U.S.S.G. § 3E1.1(a). The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the Defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the Defendant has timely notified authorities of the Defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. If, before sentence is imposed, the Defendant fails to meet U.S.S.G. § 3E1.1's criteria, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or decline to make the motion.

        **3.**        **Stipulation to the guideline calculation.** The parties stipulate to the application of the following guideline provisions, which is not binding on the court:

        **a.**        **Count Two Related to "Minor Victim 2"**

        1)        Pursuant to USSG § 2G2.1(a), the base offense level is 32.

        2)        The specific offense characteristics include a 4-level increase pursuant to USSG § 2G2.1(b)(1)(A) (minor under twelve years of age) and a 2-level increase pursuant to USSG § 2G2.1(b)(2)(A) (commission of sexual contact).

        3)        The total offense level is 38.

        b.        Pursuant to USSG § 2G2.1(d)(1), Chapter 3, Part D shall be applied as if the exploitation of "Minor Victim 1," "Minor Victim 3," "Minor Victim 4" "Minor Victim 5," "Minor Victim 6," "Minor Victim 7," and "Minor Victim 8," had been contained in a separate count of conviction. The parties stipulate to application of the following guideline provisions, which is not binding on the court:

        **c.**        **Exploitation of "Minor Victim 1"**

        1)        Base Offense Level 32

  2) The specific offense characteristics include a 4-level increase pursuant to USSG § 2G2.1(b)(1)(A) (minor under twelve years of age) and a 2-level increase pursuant to USSG § 2G2.1(b)(2)(6)(B) (use of a computer).

  3) The total offense level is 38

**d.** **Exploitation of "Minor Victim 3"**

  1) Base Offense Level 32

  2) The specific offense characteristics include a 4-level increase pursuant to USSG § 2G2.1(b)(1)(A) (minor under twelve years of age) and a 2-level increase pursuant to USSG § 2G2.1(b)(2)(A) (commission of sexual contact).

  3) Total offense level is 38

**e.** **Exploitation of "Minor Victim 4"**

  1) Base Offense Level 32

  2) The specific offense characteristics include a 2-level increase pursuant to USSG § 2G2.1(b)(1)(B) (minor between 12 and 16 years of age) and a 2-level increase pursuant to USSG § 2G2.1(b)(2)(6)(B) (use of a computer).

  3) The total offense Level is 36

**f.** **Exploitation of "Minor Victim 5" and "Minor Victim 6"**

  1) Base Offense Level 32

  2) The specific offense characteristics include a 4-level increase pursuant to USSG § 2G2.1(b)(1)(A) (minor under twelve years of age), a 4-level increase for material portraying an infant or toddler pursuant to USSG § 2G2.1(b)(4)(B), and a 2-level increase pursuant to USSG § 2G2.1(b)(2)(6)(B) (use of a computer).

  3) The total offense level is 42

**g.** **Exploitation of "Minor Victim 7"**

1)      Base Offense Level 32

2)      The specific offense characteristics include a 4-level increase pursuant to USSG § 2G2.1(b)(1)(A) (minor under twelve years of age) and a 2-level increase pursuant to USSG § 2G2.1(b)(2)(6)(B) (use of a computer).

3)      The total offense level is 38

**h.**      **Exploitation of "Minor Victim 8"**

1)      Base Offense Level 32

2)      The specific offense characteristics include a 4-level increase pursuant to USSG § 2G2.1(b)(1)(A) (minor under twelve years of age) and a 2-level increase pursuant to USSG § 2G2.1(b)(2)(6)(B) (use of a computer).

3)      The total offense level is 38

i.      Units are assigned pursuant to USSG §3D1.4(a), (b) and (c). One unit is assigned to the group with the highest offense level. One additional unit is assigned for each group that is equally serious or from 1 to 4 levels less serious. The total number of units is 7.

j.      The offense level is increased pursuant to the number of units assigned by the amount indicated in the table at USSG §3D1.4., which leads to a 5-level increase.

k.      The Combined Adjusted Offense Level is determined by taking the offense level applicable to the Group with the highest offense level (which is 42 – conduct with "Minor Victim 5" and "Minor Victim 6") and increasing the offense level by the amount indicated in the table at USSG §3D1.4 (5 levels). The combined adjusted offense level is 47.

l.      The offense of conviction is a covered sex crime, neither §4B1.1 (Career Offender) nor subsection (a) of §4B1.5 applies, and the Defendant engaged in a pattern of activity involving prohibited sexual conduct. Therefore, the Defendant is a repeat and dangerous sex offender against minors. The offense level shall be 5 plus the offense level determined under

Chapters Two and Three. In this case the applicable offense level is 52 pursuant to USSG §4B1.5(b)(1).

In exchange for the concessions made by the Government, the Defendant agrees not to seek a downward departure or variance based upon the argument that there is a lack of empirical evidence to support the recommendations of USSG § 2G2.2.

    4.    **Joint Recommendations.**  The parties recommend the following terms of the Defendant's sentence:

    a.    **Psycho-Sexual Assessment**.  The Defendant will arrange and submit to a sex offender evaluation pursuant to 18 U.S.C. § 3552(b) before sentencing in this case.  The Defendant must secure this evaluation from a mental health professional certified by the Idaho Sex Offender Classification Board (*see* https://somb.idaho.gov/wp-content/uploads/2018/10/Evaluator-Roster.pdf). The evaluation shall follow the format for psychosexual evaluations set forth by the Idaho Sex Offender Classification Board and the Practice Standards and Guidelines for Members of the Association for the Treatment of Sexual Abusers (ATSA).  The Defendant agrees to submit to all evaluation procedures at the direction of the treatment provider, including phallometry and polygraph testing if the treatment provider deems them necessary.

    b.    **Waiver of Confidentiality.**  The Defendant waives any right to confidentiality and agrees to allow the provider conducting the psychosexual evaluation (and any subsequent treatment) to supply written reports to the U.S. Probation Office, the Court, and the Government.

    c.    **Contact with Minors**.  The Defendant may not have direct or indirect contact with minors, children under the age of eighteen, unless approved in advance, in writing, by his probation officer.

      d.      **Access to Minors**. The Defendant will not reside or loiter within 300 feet of schoolyards, playgrounds, arcades or other places, establishments and areas primarily frequented by minors unless approved in advance, in writing, by his probation officer.

      e.      **Occupational Restriction**. The Defendant may not engage in any paid occupation or volunteer service that exposes him either directly or indirectly to minors, unless approved in advance, in writing, by his probation officer.

      f.      **Restriction on Computer/Internet Use**. The Defendant may not possess or use a computer or other electronic device connected to the internet unless approved in advance, in writing, by his probation officer.

      g.      **Possession of Sexually Explicit Matter Involving Minors**. The Defendant will not possess any child pornography or obscenity, or sexually explicit visual or text (written) material involving minors.

      h.      **Polygraph Testing**. The Defendant will participate in polygraph testing to monitor his compliance with supervised release and treatment conditions, at the direction of his probation officer and/or treatment staff.

      i.      **Post-Incarceration Treatment**. The Defendant will successfully complete any course of treatment related to his offense, as directed by his probation officer, including but not limited to cognitive/behavioral treatment for sexual deviancy under the direction of a qualified mental health professional who is experienced in treating and managing sexual offenders, such as a member of the Association for the Treatment of Sexual Abusers (ATSA). The Defendant will follow the rules of the treatment program as if they are the orders of the Court.

j.      **Search Provision**. The Defendant will be subject to a search of his person, home or vehicle, and any objects or materials (including computers and other types of electronic storage media) found therein, at the discretion of his probation officer.

k.      **Sex Offender Registration/Megan's Law/Adam Walsh Act Provision**. The Defendant has been advised, understands and agrees that under the Sex Offender Registration and Notification Act, a federal law, the Defendant must register and keep the registration current in each of the following jurisdictions: the location of the Defendant's residence, the location of the Defendant's employment; and, if the Defendant is a student, the location of the Defendant's school. Registration will require that the Defendant provide information that includes name, residence address, and the names and addresses of any places at which the Defendant is or will be an employee or a student. The Defendant understands that federal law requires that the Defendant must update his registrations not later than three business days after any change of name, residence, employment, or student status. *See* 42 U.S.C. § 16913(c). State laws may be more restrictive.

The Defendant has been advised and understands that Idaho law requires that such registration be updated with the sheriff of the county within two working days of coming into any county to establish permanent or temporary residence, commencement of employment or enrollment as a student in an educational institution, and provides that non-residents employed in counseling, coaching, teaching, supervising or working with minors in any way, regardless of the period of employment, must register with the sheriff of the county before beginning such employment. *See* I.C. 18-8307 (4)(a)(b). The Defendant understands that failure to comply with these obligations may subject him to prosecution for, among other things, failure to register under federal law, 18 U.S.C. § 2250, and failure to register under state law. It may also violate his supervised release.

**Plea Agreement**                    19                    Rev. September 2019

5.      **Conditional Use/Derivative Use Immunity.**  As a condition of Court-mandated evaluation and treatment, the Defendant will be required truthfully to reveal his entire sexual history, including the possibility of other sexual crimes.  Because full disclosure of that history is a necessary component of effective treatment, the Government agrees that the Defendant's admissions during psycho-sexual evaluation and sex offender treatment, to sexual crimes (excluding homicide) previously undisclosed to any law enforcement entity, will not be used against the Defendant in a new criminal prosecution.  *See United States v. Antelope*, 395 F.3d 1128 (9th Cir. 2005); *Kastigar v. United States*, 406 U.S. 441 (1972).  However, the parties agree that this use immunity and derivative use immunity, is expressly conditioned, upon: 1) the Defendant successfully completing sexual deviancy treatment, and 2) the Defendant not materially violating the rules of supervised release, and/or committing a sexual crime or a crime involving the sexual exploitation of children after the date of this agreement.  If the Defendant fails to complete all aspects of treatment, or fails to comply with all material supervised release requirements, or reoffends as described above, then this use immunity provision is rescinded and the Government may use Defendant's statements against him.

6.      **Stipulation Regarding Sentencing Guidelines.**  In exchange for the concessions made by the Government in this agreement, the Defendant agrees not to seek a downward departure or variance by arguing that U.S.S.G. § 2G2.2's recommendations lack empirical evidence supporting them.

7.      **Downward Departure or Variance Request by Defendant.**  Unless otherwise specified in this paragraph, the defendant will not seek a downward departure or variance under 18 U.S.C. § 3553(a), without first notifying the Government of the Defendant's intent to seek a downward departure and the defendant's reasons and basis therefor, such notice to be provided not less than 21 days before the date of sentencing.

**Plea Agreement**                                    20

## VII.   WAIVER OF RIGHT TO DIRECT APPEAL AND TO COLLATERAL ATTACK UNDER 28 U.S.C. § 2255

**A.**      **Waiver:**  In exchange for this agreement, and except as provided in subparagraph B, the Defendant waives any right to appeal or collaterally attack the entry of plea, the conviction, the entry of judgment, and the sentence, including forfeiture and restitution.  This waiver includes any challenge to the constitutionality of any statute of conviction including arguments that the admitted conduct does not fall within any statute of conviction.

The Defendant acknowledges that this waiver will result in the dismissal of any direct appeal or collateral attack the Defendant might file seeking to challenge the plea, conviction or sentence in this case.  Further, the filing of such an appeal or collateral attack will breach this agreement and allow the Government to withdraw from it, as well as to take other remedial action.

If the Defendant believes the Government has not fulfilled its obligations under this agreement, the Defendant will object at the time of sentencing; further objections are waived.

**B.**      **Exceptions:**

1.      **Direct Appeal:**  Notwithstanding subparagraph A, the Defendant may file one direct appeal if one of the following unusual circumstances occurs:

        a.      the sentence imposed by the Court exceeds the statutory maximum;

        b.      the Court arrived at an advisory USSG range by applying an upward departure under chapter 5K of the USSG; or

        c.      the Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory USSG range as determined by the Court.

The Defendant understands that the above circumstances occur rarely and that in most cases this agreement completely waives all appellate rights.

2. **Motion Under 28 U.S.C. § 2255:** Notwithstanding subparagraph A, the Defendant may file an ineffective assistance of counsel claim in a 28 U.S.C. § 2255 motion.

## VIII.   PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The Defendant agrees to provide financial information and any other information requested by a representative of the United States probation office for use in preparing a pre-sentence investigation report, and agrees that the United States probation office may share all financial information with the Government.  Failure to execute releases or to provide information for the pre-sentence investigation report violates this agreement and relieves the Government of its obligations from it.  Such failure by the Defendant and response by the Government will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests.  Providing materially false information will subject the Defendant to additional penalties, including an enhancement under U.S.S.G. § 3C1.1.

## IX.   DISCLOSING FINANCIAL INFORMATION

The Defendant agrees to disclose all the Defendant's assets and sources of income to the Government, including all assets over which the Defendant exercises or exercised direct or indirect control, or in which the Defendant has had any financial interest.  This includes all community property.  The Defendant also agrees to cooperate in obtaining any records relating to ownership of assets when sought by the Government.  The Defendant agrees truthfully to complete a personal financial statement within 14 days from the date the Defendant signs this agreement or from the date the financial statement is provided to the Defendant or counsel, whichever is later.  The Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within 7 days of the event giving rise to the changed circumstances.  The failure timely and accurately to complete, sign, and update the

financial statements may constitute failure to accept responsibility under U.S.S.G. § 3E1.1, as well as other things.

The Defendant authorizes the Government: (a) to obtain a credit report on the Defendant; (b) to inspect and copy all financial documents and information held by the United States probation office; and (c) to obtain all financial records related to the Defendant.

Before sentencing, Defendant agrees not to dissipate any assets without the consent of both the Government's financial litigation unit and asset forfeiture unit. If any assets are sold, any sale proceeds will be deposited with the Clerk of Court and, upon sentencing, paid toward any monetary penalties ordered in the judgment.

## X.     NO RIGHT TO WITHDRAW PLEA

The Defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing. The Defendant cannot withdraw from this agreement or the guilty plea, regardless of the Court's actions.

## XI.    CONSEQUENCES OF VIOLATING AGREEMENT

**A.     Government's Options.** If the Defendant fails to keep any promise in this agreement or commits a new crime, the Government is relieved of any obligation: 1) to make a sentencing recommendation consistent with the terms promised in this agreement; and 2) not to prosecute the Defendant on other charges, including charges not pursued due to this agreement. Such charges may be brought without prior notice. If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from this agreement in its entirety. In addition, if the Government determines after sentence is imposed that the Defendant's breach of the agreement warrants further prosecution, the Government may choose between letting the conviction(s) under this agreement stand or vacating such conviction(s) so that charge(s) may be re-prosecuted.

**Plea Agreement**                                23                      Rev. September 2019

The Government's election to pursue any of the above options provides no basis for the Defendant to withdraw the guilty plea(s) made pursuant to this agreement.

**B.**     **Defendant's Waiver of Rights.**  If the Defendant fails to keep any promise made in this agreement, the Defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the Defendant entered a plea of guilty or which were dismissed under this agreement.  In addition, for any charge that is brought as a result of the Defendant's failure to keep this agreement, the Defendant gives up:  (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations has expired.

Furthermore, if the Defendant does not enter an acceptable plea, the Government will move to continue the trial now set to allow the Government adequate time to prepare.  The Defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h).

**XII.     MISCELLANEOUS**

**A.**     **No Other Terms.**  This agreement is the complete understanding between the parties, and no other promises have been made by the Government to the Defendant or to the attorney for the Defendant.  This agreement does not prevent any Governmental agency from pursuing civil or administrative actions against the Defendant or any property.  Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this agreement does not bind or obligate Governmental entities other than that specified as the Government in this agreement (i.e., the United States Attorney's Office for the District of Idaho).

**B.**     **Plea Agreement Acceptance Deadline.**  This plea offer is explicitly conditioned on the Defendant's notification of acceptance of this agreement no later than 5:00 p.m. on March 18, 2022.

## XIII.   UNITED STATES' APPROVAL

I have reviewed this matter and the agreement.  This agreement constitutes a formal plea

offer from the Government.  Any oral discussions with the Defendant and defense counsel about a

plea do not constitute a plea offer.  Any written offer or agreement made before this agreement is

no longer a valid offer by the Government and is rescinded.  I agree on behalf of the United States

that the terms and conditions set forth above are appropriate and are in the best interests of justice.

RAFAEL M. GONZALEZ JR.
UNITED STATES ATTORNEY
By:

_____          _____
KASSANDRA MCGRADY                                    March 18, 2022
Assistant United States Attorney                          Date

## XIV.    ACCEPTANCE BY DEFENDANT AND COUNSEL

I have carefully reviewed every part of this agreement with my attorney.  I understand the

agreement and its effect upon my potential sentence.  Furthermore, I have discussed all of my

rights with my attorney and I understand those rights.  No other promises or inducements have

been made to me, directly or indirectly, by any agent of the Government, including any Assistant

United States Attorney, concerning the plea to be entered in this case.  I understand that this

agreement is a formal plea offer from the Government.  Any oral discussions between the

Government and me or my counsel about a plea do not constitute a plea offer.  Any written offer

or agreement made before this agreement is no longer valid and is rescinded.  In addition, no one

has threatened or coerced me to do, or to refrain from doing, anything in connection with this

case, including entering a guilty plea.  I understand that, if I am not a citizen or naturalized citizen

of the United States, by pleading guilty in this case it is virtually certain that I will be removed

from the United States.  I am satisfied with my attorney's advice and representation in this case.

**Plea Agreement**                          25                          Rev. September 2019

_____          3/17/22
ZANE EARL BECKMAN                         Date
Defendant

I have read this agreement and have discussed the contents of the agreement with my

client. This document accurately sets forth the entirety of the agreement. I have conveyed all

written offers from the Government to the Defendant pursuant to Missouri v. Frye, 132 S. Ct.

1399, 1408-09 (2012). I understand that this agreement is a formal plea offer from the

Government. Any oral discussions between the Government and me or my client about a plea do

not constitute a plea offer. Any written offer or agreement made before this agreement is no

longer valid and is rescinded. I have discussed with my client the fact that if my client is not a

citizen or naturalized citizen of the United States, by pleading guilty in this case, it is virtually

certain that my client will be removed from the United States. I concur in my client's decision to

plead guilty as set forth above.

_____          3/17/2022
DEBRA GROBERG                             Date
Attorney for the Defendant